**Affirmed and Opinion filed January 30, 2024.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-22-00106-CR

**IVAN PERALES ROQUE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1518590**

## OPINION

Appellant raises three issues in this appeal from a conviction for murder. In his first issue, he argues that his conviction should be reversed because he was denied the right to a speedy trial. In his second issue, he argues that the trial court erred by failing to conduct a mandatory hearing under Article 42.15(a-1) to determine his immediate ability to pay court costs. And in his third issue, which is related to his second, he argues that a hearing is needed to reconcile a conflict between the amount of costs assessed in the judgment and the bill of costs.

We overrule appellant's first issue, having concluded that the trial court did not err in denying his motion for speedy trial. We overrule appellant's second issue because the mandatory hearing was conducted during a period in which this appeal was abated. And we overrule appellant's third issue on the basis of briefing waiver.

We therefore affirm the trial court's judgment.

## BACKGROUND

Appellant was arrested in August 2016. The trial court set bail, but appellant did not post it.

In April 2021, following years of delays, the case proceeded to a trial by jury, which ultimately ended in a mistrial because the jury was unable to reach a unanimous verdict. Months after the mistrial, in January 2022, appellant pleaded guilty to the charged offense without an agreed recommendation as to punishment. The State sought twenty years' imprisonment. However, the trial court assessed a sentence of just five years' imprisonment, which appellant had already served in pretrial detention.

Appellant timely appealed the trial court's judgment.

## SPEEDY TRIAL

While he was represented by counsel, appellant filed multiple pro se motions for speedy trial and motions to dismiss. The trial court never ruled on any of these pro se motions.

But less than a week before the trial began in April 2021, counsel orally moved the trial court to dismiss the case on speedy trial grounds. The State opposed that relief, arguing that dismissal was not warranted because counsel had requested many case resets, and until that pretrial hearing, counsel had not ratified any of appellant's pro se motions.

2

The trial court denied the motion. And in the course of making its ruling, the trial court also remarked that the case was delayed because of court closures brought on by Hurricane Harvey and the coronavirus pandemic, which were beyond the control of the State.

Appellant now challenges this ruling.

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." *See* U.S. Const. amend. VI. This guarantee is written with such breadth that, if taken literally, it would forbid the government from delaying the trial of an accused for any reason at all. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). To qualify the literal sweep of the guarantee, the Supreme Court has determined that speedy-trial claims must be approached with a balancing test of four factors. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). Those factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id.*

We review a trial court's assessment of these factors under a bifurcated standard. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). For factual questions, the standard is abuse of discretion. *Id.* Because appellant did not prevail in the trial court, we presume that any disputed fact issues were resolved in favor of the State, and we defer to the implied findings of fact that the record supports. *Id.* For legal questions, including the overall balancing of the four factors, the standard is de novo. *Id.*

***The Length of the Delay.*** The starting factor is actually a "double enquiry." *See Doggett*, 505 U.S. at 651.

For the first part of this enquiry, the defendant has the initial burden of showing that the interval between accusation and trial (or the time that the defendant

3

first demands a speedy trial) has crossed the threshold dividing ordinary from "presumptively prejudicial" delay. *Id.* at 651–52; *Zamorano*, 84 S.W.3d at 648. In this context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice. *See Doggett*, 505 U.S. at 652 n.1. Rather, it simply marks the point at which courts deem the delay unreasonable enough to trigger a full enquiry of the remaining factors. *Id.* Generally, a delay of eight months or longer is sufficient to cross that threshold. *See Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

If the defendant satisfies that initial burden, then the court must proceed to the second part of the enquiry, which is to consider the extent to which the delay stretches beyond the bare minimum needed to trigger a judicial examination of the claim. *See Doggett*, 505 U.S. at 652. As the pretrial delay increases, the presumption of prejudice intensifies. *Id.*

In this case, appellant made several pro se demands for a speedy trial, but those pro se demands were not effective because appellant already had counsel and appellant was not entitled to hybrid representation. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). Appellant's first effective demand for a speedy trial was made by his counsel at the pretrial hearing in April 2021, which was more than four and a half years after appellant was charged and arrested. That length of time was more than sufficient to satisfy appellant's initial burden. And because several years had passed following the minimum threshold needed to trigger a judicial examination of the claim, we likewise conclude that this factor weighs heavily against the State. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (a delay of three and a half years between arrest and trial weighed heavily in favor of finding a violation of the right to a speedy trial).

4

***The Reason for the Delay.*** The State carries the burden of justifying its delay. *See Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). We assign different weights to different justifications. *See Barker*, 407 U.S. at 531.

Valid reasons for delay are not weighed against the State. *See Doggett*, 505 U.S. at 656. These include such reasons as collecting witnesses against the defendant, opposing his pretrial motions, or, if he goes into hiding, exercising reasonable diligence in his pursuit. *Id.*

Bad-faith delays, on the other hand, are weighed heavily against the State. *Id.* These delays occur when the State intentionally holds back in its prosecution in order to gain an impermissible advantage at trial. *Id.* When that happens, relief for the defendant is "virtually automatic." *Id.* at 657.

Occupying the middle ground are more neutral reasons such as overcrowded courts and official negligence. *Id.* at 656–57. These reasons weigh against the State, although not as heavily as in the case of a bad-faith delay, because the ultimate responsibility for such circumstances rests with the State rather than the defendant. *See Barker*, 407 U.S. at 531.

During the hearing on the speedy trial motion, the State asserted that many of the delays were attributable to "DNA retesting and testing at the request of the Defense." The record supports that assertion. One case reset form shows that the trial was reset because the parties were "waiting on DNA analysis to be completed." The trial court's docket sheet also reflects that between appellant's arraignment in September 2016 and August 2017, the case was reset a total of eight times, all at the request of the defense. This period of delay cannot be weighed against the State in a speedy-trial analysis. *See Vermont v. Brillon*, 556 U.S. 81, 92–93 (2009) (defense counsels' requests for extensions and continuances, and their "inability or unwillingness . . . to move the case forward," could not be attributed to the

5

prosecution); *see also State v. Davis*, 549 S.W.3d 688, 703 (Tex. App.—Austin 2017, no pet.) (the delay in completing complicated DNA testing could not be attributed to the prosecution).

After that last reset in August 2017, the courthouse was devastated by Hurricane Harvey, as the trial court further explained during the hearing. Delays caused by that devastation cannot be weighed against the State either. *See Ussery v. State*, 596 S.W.3d 277, 286 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (classifying the delays occasioned by Hurricane Harvey as valid).

Between October 2017 and January 2020, the case was reset an additional seven times, all at the request of the defense again. As before, this period of delay cannot be attributable to the State.

The docket sheet reflects that after January 2020, the case was reset next by operation of law in July 2020. But by then, the courthouse was closed due to the coronavirus pandemic. As the trial court explained during the hearing, "We literally just got back into this building in late 2020, the beginning of 2021." The delays caused by the pandemic do not weigh against the State. *See State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.) ("Delay caused by the onset of a pandemic cannot be attributed as fault to the State."). Indeed, the defense moved for a continuance in November 2020 precisely because a trial during the pandemic would have adverse effects on appellant's constitutional rights.

The record shows that most of the delays in this case were attributable to requests from the defense or occurrences beyond the control of the State. To whatever extent that there were delays attributable to the State, they do not weigh heavily in finding that there was a violation of appellant's right to a speedy trial.

6

***The Defendant's Assertion of his Right.*** The right to a speedy trial is unlike other rights enshrined in the Constitution because the deprivation of the right, in some instances, may actually work to the defendant's advantage. *See Barker*, 407 U.S. at 251. As the pretrial delay increases, witnesses can die, their memories can fade, or they can become unavailable for any number of reasons. If theses witnesses support the State's theory of the case, then the prosecution will be impaired, and that impairment will work to the benefit of the defendant because the State carries the burden of proof. *Id.* For that reason, the Supreme Court has recognized that "delay is not an uncommon defense tactic." *Id.*

Of course, delay can also prejudice the defendant. With the passage of time, the possibility grows that the defense may lose an alibi witness or access to other evidence with exculpatory value. *Id.* at 532. The more seriously that a defendant perceives a loss of this sort, the more likely he is to complain, and thus, the Supreme Court has held that the defendant bears "some responsibility to assert a speedy trial claim." *Id.* at 529.

The defendant's timely assertion of his right to a speedy trial is entitled to strong evidentiary weight when determining whether he was deprived of the right. *Id.* at 531–32. Although a tardy assertion will not be construed as a waiver of the right, a defendant's tardiness will compromise his ability to prove that he was denied a speedy trial. *Id.* at 528, 532.

In this case, appellant invoked his right to a speedy trial in many pro se motions, the earliest of which was filed in May 2019. But none of his invocations was effective because, as previously explained, appellant was already represented by counsel and appellant has no right to hybrid representation. *See Robinson*, 240 S.W.3d at 922. Appellant did not effectively invoke his right until his counsel raised the issue in April 2021, just days before his trial began. And in making that late

assertion, counsel specifically sought a dismissal. On these facts, the trial court was free to determine that appellant acquiesced in the delay and was not truly interested in a speedy trial. *See Balderas v. State*, 517 S.W.3d 756, 771 (Tex. Crim. App. 2016) ("A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want one.").

This factor weighs heavily against finding a speedy-trial violation. *See Dragoo*, 96 S.W.3d at 314–15 (making the same conclusion where the defendant asserted his right just before the trial began, after a delay of three and a half years).

***Prejudice to the Defendant.*** We review the final factor in light of the interests that the right to a speedy trial was designed to protect. *See Barker*, 407 U.S. at 532. The Supreme Court has identified three such interests: to prevent oppressive pretrial incarceration, to minimize the defendant's anxiety and concern, and to limit the possibility that the defense will be impaired. *Id.* Of these, the last is the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Id.*

During the hearing on the speedy trial motion, counsel did not explain how appellant had been harmed by the pretrial delay, other than to say that appellant had been in continuous custody for approximately fifteen hundred days. Appellant suggests on appeal that prejudice can be presumed by this length of delay, but we disagree. Any presumptive prejudice due to the passage of time was extenuated by appellant's acquiescence in the delay (or by counsel's role in requesting a delay), as we just explained in our discussion of the previous factor. *See Hopper v. State*, 520 S.W.3d 915, 929 (Tex. Crim. App. 2017).

Because prejudice cannot be presumed, appellant had the burden of demonstrating actual prejudice. *See State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). If he made a prima facie showing of prejudice, then the burden

shifted back to the State to prove that appellant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.*

Appellant did not suggest in the trial court, nor has he suggested in this court, that the delay impaired the possibility of a defense, which is the most serious interest that the right to a speedy trial is designed to protect. *See Barker*, 407 U.S. at 532. Instead, appellant expressed in one of his pro se motions that the delay has caused him to suffer "substantial anxiety and concern." Appellant repeats that interest on appeal, but he does not cite to any particular evidence explaining how such suffering manifested. Absent such evidence, appellant has not met his burden. *See Starks v. State*, 266 S.W.3d 605, 613 (Tex. App.—El Paso 2008, no pet.) (recognizing that "any criminal charge is certain to bring a level of anxiety with it" but concluding that the prejudice factor did not weigh in favor of finding a violation where the defendant "failed to introduce any evidence that the anxiety he suffered either was abnormal or caused his case prejudice").

Appellant also suggests that he was harmed because he continued to be incarcerated until he finally pleaded guilty. To whatever extent that appellant believes this time was oppressive, we cannot agree that appellant demonstrated any harm because, once again, much of the delay was attributable to the defense or to reasons beyond the control of the State, and appellant still received full credit for that time served. *See Porter v. State*, 540 S.W.3d 178, 184 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (concluding that the prejudice factor did not weigh in favor of finding a violation where the defendant predominately caused or acquiesced to the delay and, upon pleading guilty, he still received full credit for time served in pretrial detention).

We accordingly conclude that this factor does not weigh in favor of finding a violation of appellant's right to a speedy trial.

9

***The Balancing Test.*** The delays in this case were excessive, which means that the first factor favors appellant. However, the remaining factors do not. Most of the delays cannot be attributed to the State because those delays were caused by the defense or by occasions outside of the State's control. Also, even though appellant filed pro se motions for speedy trial and motions to dismiss, such motions were not effective until his counsel acted upon them, which in this case happened just before the trial began. That tardiness indicated that appellant did not want a speedy trial. Furthermore, appellant did not demonstrate how he was harmed by the delays. Considering all of the factors together, we cannot say that the trial court deprived appellant of his constitutional right to a speedy trial.

## ARTICLE 42.15(a-1)

The trial court must inquire "on the record" whether a defendant has sufficient resources or income to immediately pay all or part of the fine and costs. *See* Tex. Code Crim. Proc. art. 42.15(a-1). The judgment here contains a recital stating that the trial court "conducted an inquiry into Defendant's ability to pay, as directed by Article 42.15," but appellant asserts in his brief on appeal that no such inquiry actually occurred.

We ordinarily presume that the recitals in a judgment are correct. *See State v. Guerrero*, 400 S.W.3d 576 (Tex. Crim. App. 2013). But the legislature added the "on the record" requirement specifically to end the application of this presumption. *See* Senate Committee Report, 87th Leg., R.S., S.B. 1373, *available at* https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=87R&Bill=SB1373 (explaining that a statutory amendment was necessary because courts were using "boilerplate language"—i.e., recitals in the judgment—to "assume the inquiry happened, even when the inquiry is not in the record"). Thus, we cannot presume

10

that the mandatory hearing was held. To comply with the plain text of Article 42.15(a-1), there must be a record of the hearing.

When this appeal was originally set for submission, we had no transcript of the hearing required by Article 42.15(a-1), which was consistent with appellant's assertion that the hearing had never occurred. But at the same time, much of the record in this case had still not been filed. We had a transcript of a pretrial hearing, as well as a transcript of a plea hearing, but we had no transcript of the proceedings that had resulted in appellant's mistrial, nor did we have a transcript of appellant's sentencing hearing, which followed his subsequent guilty plea. The mandatory hearing to determine appellant's immediate ability to pay court costs was supposed to have occurred "during or immediately after" that sentencing hearing. *See* Tex. Code Crim. Proc. art. 42.15(a-1).

We also had a transcript of a hearing in which the trial court demanded the court reporter to show cause as to "why the transcript had not been produced or why there hadn't been findings in this case." The court reporter indicated during that hearing that she had retired, that she was no longer receiving proper notice, and that she was having difficulty accessing her files. The court reporter did not address whether the trial court had conducted the mandatory hearing under Article 42.15(a-1), whether any such hearing was transcribed "on the record" as required by that statute, or whether a transcript from any such hearing could still be prepared. The trial court did not inquire into such matters either.

Given the incomplete state of the record, we could not determine whether the hearing under Article 42.15(a-1) had never occurred (as appellant asserted in his brief), or whether the hearing had occurred but the transcript had simply not been prepared by the court reporter (either because the hearing was not recorded or

11

because the court reporter's files were inaccessible). To resolve these uncertainties, we abated the appeal with instructions for the trial court.

Upon our abatement, the State argued for the first time that we lacked jurisdiction to consider any complaint about court costs. The State rooted this argument in authorities providing that when a defendant pleads guilty, as appellant did here, the defendant may appeal only (1) those matters that were raised by written motion filed and ruled on before trial, (2) after getting the trial court's permission to appeal, or (3) where the specific appeal is expressly authorized by statute. *See* Tex. R. App. P. 25.2(a)(2); Tex. Code Crim. Proc. art. 44.02. Based on these authorities, the State argues that this court only has jurisdiction to consider appellant's speedy-trial complaint, for which there was a pretrial motion.

The State's argument cannot be reconciled with *Johnson v. State*, 423 S.W.3d 385 (Tex. Crim. App. 2014) and *London v. State*, 490 S.W.3d 503 (Tex. Crim. App. 2016). Both of those cases are appeals from guilty pleas,[1] and they each held that a defendant may raise a challenge to court costs for the first time on appeal. *See Johnson*, 423 S.W.3d at 390; *London*, 490 S.W.3d at 507.

The State also refers us to a case decided after *Johnson* and *London*, in which our sister court declined to consider a challenge to a trial court's failure to conduct a hearing under Article 42.15(a-1) because the defendant had pleaded guilty. *See Vasquez v. State*, No. 01-22-00326-CR, — S.W.3d —, 2023 WL 8587671, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 12, 2023, no pet. h.). But in that case, the trial

---

[1] The guilty plea in *Johnson* was recited in the opinion from the intermediate court of appeals. *See Johnson v. State*, 389 S.W.3d 513, 515 (Tex. App.—Houston [14th Dist.] 2012) ("Appellant Manley DeWayne Johnson pleaded guilty to aggravated robbery with a deadly weapon, and the trial court sentenced him to seven years in prison."), *aff'd as modified*, 423 S.W.3d 385 (Tex. Crim. App. 2014). The guilty plea in *London* was recited in the opinion from the Court of Criminal Appeals. *See London*, 490 S.W.3d at 505–06 ("London was convicted of possession of cocaine after pleading guilty without an agreed recommendation as to punishment.").

court certified that the defendant had the "right to appeal sentencing only." *Id.* at *1. That same limitation does not appear in appellant's case.

We therefore conclude that we have jurisdiction to consider appellant's court costs challenge.

During the abatement hearing, the trial judge stated that she did not conduct the mandatory hearing on appellant's immediate ability to pay court costs. The judge explained that, from what she recalled, appellant "had been in custody for a number of years, unable to make the bond and there was not a hearing done on his indigency status." To remedy this error, the judge decided in the interest of judicial economy to conduct the mandatory hearing during the abatement. A record of that hearing has since been filed. The effect of this record is that appellant's complaint under Article 42.15(a-1) is now moot.

## DISCREPANCY IN COURT COSTS

The judgment recites that appellant was assessed court costs in the amount of $290. But the bill of costs, which was prepared more than two weeks after the judgment, recites that appellant was assessed court costs in the amount of $1,450.

Based on this discrepancy, appellant asserts that his case should be remanded for a hearing to determine the proper amount of court costs. But appellant supplies no authority demonstrating that he would be entitled to such relief. In fact, he cites to no authority whatsoever, even though that was his burden. *See* Tex. R. App. P. 38.1(i).

Appellant addresses the discrepancy in court costs in the same discussion as his argument under Article 42.15(a-1). But to whatever extent that appellant argues indirectly that he is entitled to additional relief under Article 42.15(a-1), his argument is unavailing. The purpose of an inquiry under Article 42.15(a-1) is to

13

determine whether a defendant has the immediate ability to pay costs, or whether alternative payment arrangements should be made. The inquiry is not designed to resolve the sort of discrepancy that appellant has identified, which involves calculations that are often prepared after a criminal trial has already ended. *Johnson*, 423 S.W.3d at 391 ("Typically, a defendant will be sentenced in open court, but the written judgment is prepared at a later date."); *id.* at 394 ("Therefore, matters pertaining to the imposition of court costs need not be brought to the attention of the trial court, including a bill of costs prepared after a criminal trial."). Even if an inquiry under Article 42.15(a-1) could resolve this sort of discrepancy, appellant had an opportunity to raise this discrepancy during the abatement hearing, but he failed to take it. He merely testified instead that he was indigent.

Appellant has not presented any argument supported by authority as to how this court must resolve a discrepancy in court costs. We decline to make that argument on his behalf, and we overrule this issue as inadequately briefed.

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant.
Publish — Tex. R. App. P. 47.2(b).

14